Munroe C. RAPER, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F–76–792.

Court of Criminal Appeals of Oklahoma.

Feb. 14, 1977.

Robert H. Galbraith, Oklahoma City, for appellant.

Larry Derryberry, Atty. Gen., Robert L. McDonald, Asst. Atty. Gen., Eric Warner, Legal Intern, for appellee.

## OPINION

BUSSEY, Presiding Judge:

Munroe C. Raper, hereinafter referred to as defendant, was charged, tried and convicted in the District Court, Kay County, Case No. CRF–76–38, for the offense of Robbery by Force in violation of 21 O.S. 1971, § 791. His punishment was fixed at thirty (30) years' imprisonment, and from said judgment and sentence a timely appeal has been perfected to this Court.

At the trial, Frank Hall testified that he was employed as a police officer for the City of Tonkawa; that on the evening of February 13, 1976, he investigated a robbery at the Wagonwheel Liquor Store in

Tonkawa. He identified State's Exhibit No. 1 as a copy of a diagram he made of the area of the liquor store. He further identified State's Exhibits 2, 3 and 4 as photographs he took at the scene.

Ben C. Thompson testified that he was working at the Wagonwheel Liquor Store on the evening of February 13, 1976; that sometime between 8:00 and 9:00 p. m. a person, whom he subsequently identified as defendant, entered the store and purchased a pint of Jim Beam Whiskey. Defendant asked if he could watch T.V. with him. Defendant sat on the corner of the cash register desk until the T.V. program was over. A female friend of the defendant entered the store and defendant told her to go back to the "transportation." Defendant left the store shortly behind her and returned in approximately fifteen minutes and bought another pint of Jim Beam. Defendant stated, "Why, you've got another good program on. I'll have to watch it awhile." [Tr. 94] Thompson started making preparations to close the store at approximately 9:55 p. m. The defendant came up behind him and demanded that he open the cash register. They struggled and defendant grabbed him around the shoulder with one hand and opened the cash register with the other hand. Thompson ran out the front door to seek help. Defendant followed him outside and dragged him back into the store. He opened the cash register, took the money and left. He called for help and the police arrived shortly thereafter.

Edward A. Cunningham testified that he was the manager of the Wagonwheel Liquor Store. He responded to a call from Mr. Thompson and went to the liquor store on the evening of February 13, 1976. The cash register was open and $219.00 was missing.

Officer David A. Rogers testified that he answered a call to the Wagonwheel Liquor Store, arriving between 9:30 and 10:00 p. m. Ben Thompson appeared to be very short of breath and extremely excited. He obtained a description of a suspect from Mr. Thompson and broadcast the same to the dispatcher.

Alvin L. Honeycutt testified that he was with the defendant and Rossie King on the evening of February 13, 1976. The defendant was driving his pickup. They went to the Wagonwheel Liquor Store. Defendant entered the store and remained approximately fifteen minutes and returned with a pint of whiskey. Defendant left the pickup again. He returned shortly thereafter and they drove away. Defendant pulled a bottle of whiskey and money from under the seat and stated that he had robbed the liquor store.

On cross-examination he testified that he had been previously convicted of Driving While Under the Influence and Illegally Carrying a Shotgun. He further testified that the Robbery by Force charge against him had been reduced to "Retaining of Stolen Property." [Tr. 133] He met defendant and Rossie King about noon on February 12th. They drank whiskey that afternoon and evening and spent the night in a motel and continued to drink the following day.

Deputy Sheriff Jim McBride testified that he assisted in the investigation of the robbery at the liquor store. He obtained a description of an older model tan Dodge pickup. He observed the pickup at approximately 11:30 p. m. at a restaurant near the I-35 and Billings exit. He looked into the pickup and observed two pint bottles of Jim Beam and five dollar bills laying on the floor. He radioed for assistance and the Noble County Deputies arrived in approximately fifteen minutes. Defendant, Alvin Honeycutt and Rossie King were subsequently arrested as they exited from the camper portion of the pickup. He transported the defendant to the Noble County Sheriff's Office. Ninety-five dollars in currency was found upon defendant's person while he was being booked into the county jail.

Deputy Sheriff Steve Bunch testified that he assisted in arresting the defendant from the pickup. He found two pint bottles of Jim Beam and approximately $66.00 in currency on the floorboard of the pickup.

Deputy Sheriff Kenneth Willerton testified that on February 14, 1976, he went to Perry to pick up defendant, Alvin Honeycutt and Rossie King. He also took custody of two pint bottles of whiskey and a plastic bag containing currency.

Defendant did not testify, nor was any evidence offered in his behalf.

■ Defendant first asserts that the trial court erred in denying his Motion for Continuance in order to allow preparation of transcript of preliminary hearing at public expense. We would first observe that an indigent defendant may not be denied access to a transcript of his preliminary hearing because of his inability to pay unless there are acceptable alternatives to the completed transcript such as tape recordings of the preliminary hearing. See *Brinlee v. State*, Okl.Cr., 543 P.2d 744 (1976).

■ The questions would thus arise, did the defendant show due diligence in acquiring the transcript and whether it was needed for cross-examination of prosecuting witnesses. See *Wright v. State*, Okl.Cr., 505 P.2d 507 (1973). We have carefully examined the record and find that each question must be answered in the negative. The record reflects that the preliminary hearing was held on March 11, 1976. The defendant was notified on April 12th that his trial was set for May 4, 1976. Defendant did not file a motion for transcript of preliminary hearing until April 21, 1976, nor did he file a Motion for Continuance until April 29, 1976, six days prior to trial. We are of the opinion that defendant's failure to timely request the transcript until thirteen days prior to trial does not constitute due diligence. We further observe that defendant has totally failed to show how he was prejudiced at the trial by a lack of the transcript. Defendant candidly admits in his brief that "whether the defendant was prejudiced because he was denied a copy of the transcript is speculative at best." In *Kirk v. State*, Okl.Cr., 555 P.2d 85 (1976), wherein defendant urged that the trial court erred in refusing to grant his Motion for Continuance in that the preliminary

hearing transcript had not been completed, we stated:

"Looking at the entire record as a whole, as we must under *Andrews v. State*, 84 Okl.Cr. 104, 179 P.2d 491 (1947), we find no reason to believe that the trial court abused its discretion by overruling the Motion for Continuance in this case. The defendant had ample time to procure a transcript but failed to do so. If such failure was unavoidable then there is a two-fold test to apply. First, did the defendant exercise due diligence in trying to obtain a transcript and did he timely notify the court of this problem? The record is clear that there is no evidence that defendant did either. Secondly, after examining the record, is there evidence that the defendant was prejudiced by a lack of said continuance? Once again we find the answer to be in the negative. Defendant's Motion for Continuance fails to show by affidavit or other means what testimony he requires prior to trial. The record of the trial reveals a more than adequate defense. Defendant cross-examined the State's witnesses at length. At no time did he show that he was hampered or handicapped by a lack of a transcript. . . ."

■ Defendant contends, in the second assignment of error, that the trial court erred in failing to grant a mistrial after prejudicial remarks were made by the District Attorney in the voir dire examination and during the closing argument. Defendant first objects to the remarks made during the voir dire examination wherein the District Attorney stated to the jury that the minimum punishment for Robbery by Fear was ten years rather than the correct minimum punishment of five years. We need only observe that in overruling defendant's Motion for Mistrial, the trial court stated:

"In ruling on the objection, the Court notes that all the jurors agreed to follow the Court's instructions as they were given to them, and the Court has no reason to doubt at this time that they will follow the instruction as to penalty, whatever it

may be. Therefore, the motion for mistrial is overruled, and exception allowed to the defendant."

[Tr. 102] The trial court thereafter properly instructed the jury as to the punishment in its Instruction No. 9 [Tr. 185, 186]. The prosecuting attorney further corrected himself in the closing argument as to the correct minimum punishment. We, thus, conclude that the District Attorney's incorrect statement as to the punishment falls within the provisions of 20 O.S.1971, § 3001, which provides as follows:

"No judgment shall be set aside or new trial granted by any appellate court of this state in any case, civil or criminal, on the ground of misdirection of the jury or the improper admission or rejection of evidence, or as to error in any matter of pleading or procedure, unless it be the opinion of the reviewing court that the error complained of has probably resulted in a miscarriage of justice, or constitutes a substantial violation of a constitutional or statutory right."

■ Defendant next complains, under this assignment of error, that the trial court erred in failing to grant his Motion for Mistrial when the District Attorney recommended a sentence of 101 years in his closing argument and said, "There is a reason for it." Defendant argues that this statement referred to evidence not before the Court and was highly prejudicial and inflammatory. We have carefully examined the entire closing argument and find that the remark made by the District Attorney was not referring to evidence not before the court. Prior to making the recommendation, the District Attorney set forth the criteria upon which it was based, namely the nature of the crime, the elderly victim and the overwhelming evidence of defendant's guilt.

■ We have continuously held that the right of argument contemplates liberal freedom of speech; counsel for both the State and defendant have a right to discuss fully from their standpoints the evidence and the inferences and deductions arising therefrom and it is only when argument by the State is grossly improper on some point which may have affected defendant's rights that a reversal can be based on improper argument. See, *Noble v. State*, Okl.Cr., 497 P.2d 452 (1972).

■ Defendant asserts, in the third assignment of error, that the trial court committed prejudicial error in requesting of the District Attorney if he had any rebuttal evidence which unduly emphasized the fact that the defendant did not take the stand in his behalf and denied him a fair and impartial trial. We concur with the defendant that the trial court's request as to rebuttal was improper in that there was no evidence presented by the defendant to rebut. We disagree, however, that the inadvertent remark unduly emphasized the fact that the defendant did not testify. We, therefore, find this assignment of error to be without merit.

■ Defendant contends, in the final assignment of error, that the sentence is excessive and was a result of the improper remarks made by the District Attorney. We have repeatedly stated that the question of whether punishment is excessive must be determined by a study of all the facts and circumstances in each individual case and that this Court does not have the power to modify a sentence unless we can conscientiously say that under all the facts and circumstances the sentence is so excessive as to shock the conscience of the Court. See *Barnett v. State*, Okl.Cr., 521 P.2d 411 (1974). Considering the nature of the offense, the age and physical condition of the victim and the overwhelming evidence of defendant's guilt, we can not conscientiously say that the sentence imposed shocks the conscience of this Court. We would further observe that it is readily apparent that the jury was not prejudiced by the District Attorney's remarks in that he recommended a sentence of 101 years and the jury assessed a punishment of only thirty years. The judgment and sentence is accordingly,

*AFFIRMED.*

BLISS and BRETT, JJ., concur.