Gene Clifton LEE, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F–78–673.

Court of Criminal Appeals of Oklahoma.

Sept. 10, 1979.

Stephen D. Colbert, Ardmore, for appellant.

Jan Eric Cartwright, Atty. Gen., David W. Lee, Asst. Atty. Gen., Bruce Rooker, Legal Intern, for appellee.

## OPINION

CORNISH, Presiding Judge:

The appellant, Gene Clifton Lee, appeals from a conviction in the District Court of Carter County, CRF–77–229, for the offense of Attempted Robbery With Firearms, After Former Conviction of a Felony. He was sentenced to forty-five (45) years' imprisonment. We affirm.

Two masked persons, one male and one female, walked into the T & M Pharmacy in Ardmore, Oklahoma, at approximately 2:30 to 2:40 p. m. on Wednesday, December 7, 1977. The male, armed with a pistol, announced that the store was being robbed and demanded all the money and "Class A Drugs." The pharmacist, Bill Michael, asked what was meant by "Class A drugs," and the female responded they wanted Preludin and Quaalude. Mr. Michael then informed the female that he recognized her and asked them to leave. The male left the pharmacy immediately, but the female did not leave. Mr. Michael then instructed an employee to turn on an alarm, which the woman then attempted to prevent. The alarm was apparently a ruse, as the phar-

macy had no alarm system. Shortly thereafter, the female departed.

At about the time the would-be robbers were exiting the pharmacy, two citizens, Ms. Barbara Terry and Ms. Justa Appleton, who are sisters, were driving by in their car. They noticed the two masked individuals and quickly surmised that a robbery had taken place. They followed the car in which the robbers fled and obtained the license plate number of the car.

The two sisters returned to the pharmacy and gave the investigating police officer the slip of paper on which was copied the suspect vehicle's tag number. Subsequently, the tag number and the vehicle description were radioed to on-duty police officers. Several officers recognized the description of the vehicle as that of the appellant, who was arrested at his home.

I

The appellant's first assignment of error relates to the eyewitness identification of Bill Michael. Mr. Michael identified the appellant in court as the man who had attempted to rob him. It is argued this was error due to the impropriety of identification procedures employed prior to trial.

In *Manson v. Brathwaite*, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977), the United States Supreme Court held that the single determinative quality for the admission of identification testimony is reliability. Id. at 114, 97 S.Ct. 2243; *Neil v. Biggers*, 409 U.S. 188, 199, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972). The reliability of the identification is evaluated by an examination of the "totality of the circumstances." *Manson v. Brathwaite*, supra, 432 U.S. at 104, 97 S.Ct. 2243; *Stovall v. Denno*, 388 U.S. 293, 302, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967).

*Manson* specifies the factors enumerated in *Neil* as guidelines for examining the "totality of the circumstances." *Manson v. Brathwaite*, supra, 432 U.S. at 115, 97 S.Ct. 2243.

■ The factors to be weighed against the corrupting effect of the suggestive procedure in assessing reliability are: (1) the witness' opportunity to view the criminal at the time of the crime; (2) the witness' degree of attention; (3) the accuracy of the witness' prior description of the criminal; (4) the level of certainty demonstrated at the confrontation; and (5) the length of time between the crime and the confrontation.

The Supreme Court has held that the Due Process Clause of the Fourteenth Amendment is violated when the photographic identification procedure is "so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *Simmons v. United States*, 390 U.S. 377, 384, 88 S.Ct. 967, 971, 19 L.Ed.2d 1247 (1968). However, in *Neil v. Biggers*, supra, the Court clarified the relationship between "suggestiveness" and "reliability" by its statement of the issue, "whether under the 'totality of the circumstances' the identification was reliable even though the confrontation procedure was suggestive." 409 U.S. at 199, 93 S.Ct. at 382.

In *Thompson v. State*, Okl.Cr., 438 P.2d 287, 289 (1968), this Court set forth a number of procedures to insure the validity of a lineup identification and reduce the likelihood of having in court identifications tainted by an improper pretrial lineup. However, these procedures are only recommended, not required; and subsequent cases have clearly held that failure to follow each and every procedure recommended is not, per se, grounds for reversal where there is substantial compliance with the *Thompson* guidelines. See *Wilson v. State*, Okl.Cr., 556 P.2d 1311 (1976).

■ In accordance with the foregoing analysis, we proceed to examine the circumstances of the identification in this case. The appellant argues that Mr. Michael is the only witness out of seven who identified the appellant as the perpetrator. The implication is that if the other six were unable to identify him, then Mr. Michael's identification must be questionable. This argument is not persuasive. Mr. Michael was the manager of the store. His responsibility for events therein could provide greater

motivation to observe and remember the appearance of the robbers. The record, in fact, reflects that he correctly identified the female suspect during the robbery attempt. Applying the five factors of *Neil v. Biggers,* supra, in the present context, there appears to be little indication that the identification was unreliable.

■ The appellant next urges that the photographic lineup was suggestive because the three photographs shown to the witness "did not look anything alike." Mr. Michael testified clearly that five or six photographs were shown to him and that they were of "different people," not that they looked "nothing alike."

■ The appellant also contends that Mr. Michael's response to an inquiry by the State at trial demonstrated an insufficient identification:

"Q. Okay, without the photographs, would you [have] been able to identify him today, without observing the photographs, prior to that?

"A. Probably would have."

The appellant's contention is that this response was "not sufficient under the law of the State of Oklahoma to constitute evidence beyond a reasonable doubt and the jury abused its discretion in finding that the defendant . . . was guilty beyond a reasonable doubt."

The appellant cites no authority indicating that this proposition is founded in law, nor do we know of any. The circumstances of this case indicate convincingly that Mr. Michael's identification was based on his observation during the robbery, not from the pretrial photographic lineup.

■ The appellant contends the robber wore a piece of hosiery over his face, thus making any identification questionable. However, Mr. Michael was not hesitant in any identification procedure, and as mentioned above he correctly identified the female partner, although she too had hosiery over her face. Further, the descriptions of the clothing and physical build of the two robbers were consistent as between the two eyewitnesses who testified and as between those eyewitnesses and the descriptions given by the policemen who arrested the appellant.

■ Finally, the appellant charges that Mr. Michael wore glasses for farsightedness, which the appellant claims would destroy vision at a distance. However, the glasses were bifocals, thus permitting vision at close range as well as at a distance. Furthermore, Mr. Michael saw the robber from a distance of five feet, and there is no showing that Mr. Michael's vision was inadequate at that distance.

Upon thorough assessment of the record, we find the identification to be reliable and the identification procedure not impermissibly suggestive. The first assignment of error is therefore without merit.

## II

■ The appellant's second assignment of error charges wrongful admission into evidence of the preliminary hearing testimony of Ms. Justa Appleton and the slip of paper upon which she wrote the license tag number. Specifically, the appellant charges that the State failed to show that Ms. Appleton was unavailable for trial and that the witness was improperly subpoenaed. The facts of the case clearly establish that Ms. Appleton was ill and unavailable during the trial. Her sister testified to this fact, and the note from the doctor to the same effect is corroborative. The trial court so ruled, and in the absence of clear abuse of discretion we will not reverse the trial court. *State v. Gates,* Okl.Cr., 576 P.2d 313 (1978). See also *Hamilton v. State,* 95 Okl.Cr. 262, 244 P.2d 328 (1952).

■ The allegation of improper service of process is likewise without merit. The subpoena appeared to be fair on its face, including the return. There is no showing that the Deputy Sheriff, charged with the service of the subpoena, was not with Ms. Appleton's sister, Ms. Terry, when she delivered the subpoena to Ms. Appleton. Furthermore, the testimony of Ms. Appleton was merely cumulative.

## III

■ The appellant's third assignment of error concerns the denial of the appellant's right to interpose the privilege of husband and wife. The appellant's "wife" already had a husband. Plural marriages are prohibited in Oklahoma by the State Constitution. The issue is clearly settled in *Whitney v. Whitney*, 192 Okl. 174, 134 P.2d 357 (1943). The Supreme Court of Oklahoma stated in the Syllabus by the Court:

"Plural marriages are by Art. 1, § 2, Constitution of Oklahoma, forever prohibited, and are void ab initio, and such a marriage, whether ceremonial or common law, *does not confer on either of the parties any of the rights or privileges of a valid marriage.*" (Emphasis added)

The appellant does not assert that Sandra Lee was not previously married, rather he asserts that the second marriage, between himself and Ms. Lee, conferred marital rights and privileges upon them. The appellant cites no authority for this proposition. We find *Whitney* persuasive and, therefore, the third assignment of error is without foundation.

## IV

■ The fourth assignment of error is that the sentence imposed was excessive. It is well established that this Court lacks power to modify a sentence unless it is so excessive as to shock the conscience of this Court. *Johnson v. State*, Okl.Cr., 386 P.2d 336 (1963). The appellant has at least three felony convictions which precede the sentence imposed here. Applying the above test to the facts and circumstances, we find no basis for modification of the judgment and sentence. Compare *Lee v. State*, Okl. Cr., 560 P.2d 226 (1977); *Barnett v. State*, Okl.Cr., 521 P.2d 411 (1974); *Jackson v. State*, Okl.Cr., 509 P.2d 177 (1973).

Accordingly, the judgment and sentence is *AFFIRMED*.

BRETT and BUSSEY, JJ., concur.